UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD KEENAN,

       Plaintiff,

v.

O'REILLY AUTO ENTERPRISES, LLC,

       Defendant.
_____/

Case No. 2:23-cv-12919
Hon. Brandy R. McMillion
United States District Judge

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 33)

Before the Court is Defendant O'Reilly Auto Enterprises, LLC's ("O'Reilly") Motion for Summary Judgment (ECF No. 33). The Motion has been adequately briefed so the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court **GRANTS** the Motion (ECF No. 33).

### I.

This case concerns a slip-and-fall that happened outside an auto shop in Flint, Michigan. One afternoon in mid-August 2023, Plaintiff Bernard Keenan ("Keenan"), an 80-year-old classic car enthusiast and former mechanic, realized he needed a motor mount for "an '08 Monte Carlo." ECF No. 34, PageID.206-208, 213. Struck by this need, Keenan hopped in his Chevy Silverado—equipped with standard running boards (the step attached to some trucks for easy entry into the

1

cab)—and drove to a local O'Reilly Auto Parts store to make his purchase. *Id.* at PageID.206-207, 209, 213.

Keenan pulled into the store's parking lot and parked almost directly in front of the store entrance and next to another vehicle, which he believed to be a Buick Regal. ECF No. 34, PageID.207-208. Keenan noticed that the Regal's hood was open and there was a man "messing with it." *Id.* Though Keenan couldn't quite open the door of his truck "all the way," "[t]here was enough room" between him and the Regal for him to open it "most of the way." *Id.* at PageID.209. Keenan then got out of his truck and, although he wasn't looking at the ground, "might have stepped in some of the oil at that time" before going inside the auto parts store. *Id.* at PageID.207, 209.

As he walked into the store, Keenan's "foot slipped a little bit" on the tile floor, prompting him to wipe his shoes on "part of their rug." ECF No. 34, PageID.209. Keenan then walked to the counter, ordered his motor mount from an employee, waited a couple minutes for the employee to retrieve the item, and then paid for it. *Id.* at PageID.210. Keenan then exited the O'Reilly Auto Parts store and saw that the Regal (and its owner) had left. *Id.* at PageID.207-209. With a car no longer right next to his truck, Keenan was able to walk "about a foot wider" into the spot where the Regal had been parked. *Id.* at PageID.212. Keenan "walked into the oil" as he approached his truck, opened the driver-side door, stepped on the running

2

board, and "slipped and fell backwards." *Id.* at PageID.207, 212-213; *see id.* at PageID.241, 244 (indicating that Keenan "parked crooked" and his truck's driver-side door was directly over the oil).

After he fell, Keenan pulled himself up, noticed "dark color[ed]" "oil or grease" on his arm, and took photos of the oil spill before walking back into the store. ECF No. 34, PageID.210, 215. When he got inside, he told two employees about the oil and his fall. *Id.* at PageID.209-211, 229, 238. This led an employee, Zachary Kendrick, to accompany Keenan outside to take photos of the oil and clean it up. *Id.* Keenan then got in his truck and drove himself to the hospital, where he complained of pain in his tailbone and neck. *Id.* at PageID.210, 219.

The focus of O'Reilly's Motion is on when Keenan told the O'Reilly employees about the oil in the parking lot, *i.e.*, whether he did so when he entered the store the first time or not until after he fell. And on this, his testimony is unclear. Keenan testified that upon entering the store the first time he told the employees that he "got a mess in your garage [sic]," "got a mess all over," and that "[t]here's oil out there." ECF No. 34, PageID.209; *see id.* at PageID.210 ("I said, 'I'm sorry if I did make a mess,' you know, that, 'There is some oil,' I guess—looked like oil to me."). But, later in his deposition, when asked if he said anything about oil in the parking lot when he first entered the store, Keenan testified: "Not to my knowledge." *Id.* at PageID.214. And when explicitly asked if he told the employees "during that first

3

trip" inside "that there was oil in the parking lot," Keenan stated: "To the best of my knowledge, I don't remember." *Id.* at PageID.210.

The other consideration important to O'Reilly's Motion is evidence of how long the oil had been in the parking lot. Though Keenan "truthfully" didn't know how long the oil had been there, as a former mechanic he guessed that it was "fresh[]" and had been there for 30 to 60 minutes. ECF No. 34, PageID.213-214. But he ultimately testified that he "should say, no, I don't know" how long it had been on the ground. *Id.* Kendrick also stated the spot looked like "fresh" oil when he went out to photograph the oil. *Id.* at PageID.240.

In mid-October 2023, Keenan sued O'Reilly Auto Enterprises, LLC, and O'Reilly Automotive Stores, Inc. (the "O'Reilly Defendants"), in Genesee County Circuit Court. ECF No. 1, PageID.1, 6-10. He alleged that the O'Reilly Defendants owed him a duty as an invitee to maintain their parking lot in a safe manner. *Id.* at PageID.9. They breached that duty, Keenan contended, when they failed to inspect the parking lot and failed to clean it and keep it "free of foreign substances that created a fall hazard." *Id.* at PageID.9-10.

In mid-November 2023, the O'Reilly Defendants timely removed this case to federal court. *See* ECF No. 1. By mid-March 2024, the parties had stipulated to the dismissal of Defendant O'Reilly Automotive Stores, Inc., leaving O'Reilly Auto Enterprises, LLC as the only remaining defendant. *See* ECF No. 16. On April 2,

4

2024, the case was reassigned to the undersigned. *See Administrative Order*, 24-AO-007. Eight months later, in early January 2025, O'Reilly moved for summary judgment. ECF No. 33. That Motion is fully briefed. *See* ECF Nos. 34, 35. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

When a party moves for summary judgment, it must show there's no genuine dispute on any material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the nonmoving party only when there exists "a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Yet, despite this entitlement

> to all reasonable inferences when evaluating a summary judgment motion, when a plaintiff's claims are only supported by his "own contradictory and incomplete testimony . . . no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint."

*Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 449 (6th Cir. 2017) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)). Courts have thus "repeatedly held that a plaintiff's internally contradictory deposition testimony

5

cannot, by itself, create a genuine dispute of material fact." *Bush*, 683 F. App'x at 449 (collecting cases). And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-248). The court does not weigh the evidence to determine the truth of the matter but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

## III.

O'Reilly argues that Keenan can't establish the "notice" element of his premises-liability claim, and therefore summary judgment is proper in its favor. The Court agrees.[1]

This is a premises liability case. *See Jeffrey-Moise v. Williamsburg Towne Houses Cooperative, Inc.*, 971 N.W.2d 716, 723 (Mich. Ct. App. 2021) (explaining that allegations of injury arising from a "dangerous condition of the land" sound in premises liability and not ordinary negligence); ECF No. 34, PageID.179 (acknowledging Keenan's claims sound in premises liability). And in Michigan, premises-liability plaintiffs must establish four things: duty, breach, causation, and harm. *Kandil-Elsayed v. F & E Oil, Inc.*, 1 N.W.3d 44, 51 (Mich. 2023). The first element, duty, looks at the relationship between the actor (O'Reilly) and the injured person (Keenan) to see if the actor has "any legal obligation" to and for the benefit of the injured person. *Id.* (citation omitted). In the realm of premises liability, this means that a "landowner's duty to a visitor depends on that visitor's status." *Id.* at 51-52. Here, Keenan was an invitee because he went to O'Reilly Auto Parts "for business purposes." *See id.* at 52.

---

[1] O'Reilly also makes an additional argument that Keenan is barred from recovering noneconomic damages based on his comparative fault (*see* ECF No. 33, PageID.151); but because the "notice" argument is dispositive, the Court need not reach a determination on O'Reilly's second argument about comparative fault and noneconomic damages.

7

In Michigan, invitees are "entitled to the highest level of protection under premises liability law." *Kandil-Elsayed*, 1 N.W.3d at 52. Thus, "[l]and possessors owe a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Id.* (internal quotation marks and citation omitted). Success on a premises liability claim depends on a plaintiff-invitee establishing that the premises owner breached their duty to the invitee and that the breach was a proximate cause of an injury. *Albitus v. Greektown Casino, LLC*, 984 N.W.2d 511, 514 (Mich. Ct. App. 2021).

If the premises owner knew or should have known of a dangerous condition and failed to protect an invitee by "repair, warning, or other appropriate mitigation of the danger under the given circumstances," that owner has breached its duty. *Albitus*, 984 N.W.2d at 514-15. "Knew or should have known" is another way of saying that the premises owner must have "actual or constructive notice" of the dangerous condition at issue. *Id.* at 515; *Ramadan v. Home Depot, Inc.*, 504 F. Supp. 3d 695, 708 (E.D. Mich. 2020).

A. **Actual Notice**

Actual notice is present when a storeowner directly knows about a dangerous condition on the premises. *See Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 350 (Mich. 2016). It is typically established if the premises owner created the dangerous condition or received a complaint about the condition. *See Pugno v. Blue*

8

*Harvest Farms, LLC*, 930 N.W.2d 393, 404 (Mich. Ct. App. 2018) ("Where the possessor is the one who created the condition, knowledge of the condition is imputed to the possessor"); *Harris v. Singh Mgmt. Co., LLC*, No. 359280, 2023 WL 7101950, at *4 (Mich. Ct. App. Oct. 26, 2023) (observing that the plaintiff had failed to present evidence of actual notice where there was testimony the property's maintenance supervisor "did not recall receiving any complaints" about the dangerous condition at issue).

Here, Keenan fails to establish a genuine and material factual dispute on whether O'Reilly had actual notice of the oil in the parking lot. There's no indication of who created the oil spill, but Keenan's testimony suggests it was from the Buick Regal. *See* ECF No. 34, PageID.207-209. And the record is void of any evidence that O'Reilly placed the oil in the parking lot, creating the dangerous condition. Therefore, the Court cannot impute knowledge of the oil spill to O'Reilly. *See Pugno*, 930 N.W.2d at 404.

As for a complaint, Kendrick and Perkins both testified that Keenan didn't tell them about oil in the parking lot until after he fell. *See* ECF No. 34, PageID.229, 238. So, their testimony doesn't help Keenan. Nor does his own. While true some of Keenan's testimony indicates he told the O'Reilly employees about the oil on his first trip into the store (*see id.* at PageID.209-210), other testimony directly contradicts these accounts. In response to questions specifically seeking clarity on

9

the sequence of events, Keenan contradicts himself at least twice. First, when asked if he said anything about oil upon first entering the store, Keenan responded: "Not to my knowledge." *Id.* at PageID.214; *see also id.* at PageID.180 (conceding in response brief that "[w]hen pressed, [Keenan] was not sure whether he used the word 'oil' when speaking with the employees"). Second, he testified that "[t]o the best of [his] knowledge" he didn't remember if he told the employees about the oil "during that first trip" inside the store. *Id.* at PageID.210. Thus, some of his testimony indicates he *did* tell the employees about the oil on his first trip inside and some of his testimony indicates he *did not*. And although the Court must look at the facts in the light most favorable to Keenan, his "internally contradictory deposition testimony" isn't enough—by itself—to create a genuine and material factual dispute on actual notice. *Bush*, 683 F. App'x at 449. Because Keenan hasn't presented any other evidence that O'Reilly's employees knew of the oil in the parking lot, he has failed to establish a genuine issue of material fact on the issue of actual notice.

    **B.**    **Constructive Notice**

Establishing constructive notice requires a plaintiff to present evidence that "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Albitus*, 984 N.W.2d at 515. Evidence that the condition existed for a "sufficient length of time" must allow

a jury to "infer that [the] defendant should have discovered and rectified the condition." *Clark v. Kmart Corp.*, 634 N.W.2d 347, 349 (Mich. 2001).

The question of whether a condition "has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice" is typically a factual question, not a legal one. *MacDonald v. Ottawa Cnty.*, 967 N.W.2d 919, 925 (Mich. Ct. App. 2020) (quoting *Banks v. Exxon Mobil Corp.*, 725 N.W.2d 455, 455 (Mich. 2007)) (internal quotation marks omitted). Whether the premises owner should have reasonably discovered the condition when a third person creates the condition is usually a factual question too. *Pugno*, 930 N.W.2d at 404. However, if speculation or conjecture is all that a plaintiff presents on these issues, summary judgment is appropriate. *McNeill-Marks v. Midmichigan Med. Ctr.-Gratiot*, 891 N.W.2d 528, 535 (Mich. Ct. App. 2016); *see Skinner v. Square D Co.*, 516 N.W.2d 475, 484 (Mich. 1994) ("[L]itigants do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess."); *Johnson v. Home Depot U.S.A. Inc.*, No. 2:23-cv-10850, 2024 WL 4453756, at *4 (E.D. Mich. Oct. 9, 2024) (finding no constructive notice where the plaintiff failed to present any evidence of when the condition arose or that would allow a jury to infer it existed for a sufficient amount of time).

The Court finds that Keenan has also failed to establish a genuine issue of material fact on whether O'Reilly had constructive notice of the oil in the parking

11

lot. Keenan hasn't presented concrete evidence of when the oil was spilled in the parking lot. *See Johnson*, 2024 WL 4453756, at *4. Though he testified that his experience as a mechanic led him to believe the oil had been there 30 minutes to an hour, he conceded that he "truthfully" did not know long it had actually been there. ECF No. 34, PageID.213-214. He also testified that he ***might*** have stepped in the oil when he got out of his truck upon first arriving at the store. *Id.* at PageID.207. Further, both Keenan and Kendrick testified that the oil was "fresh," implying that it was not there for a significant period of time; but neither actually knew. *See* ECF No. 34, PageID.213-214, 240. And given Keenan's testimony that he was inside the store for "[m]aybe five minutes or less," if that was the case, that's a short window for O'Reilly employees to have seen the oil. *Id.* at PageID.216.

When faced with similar situations, other courts have declined to find constructive notice. *See Bragg v. Daimler Chrysler*, No. 290371, 2010 WL 3604428, at *6 (Mich. Ct. App. Sept. 16, 2010) (per curiam) (reversing denial of summary disposition because the plaintiffs failed to establish a factual dispute on constructive notice where the only evidence demonstrated the hazard may have been present from "an hour and a half" to "a few minutes" before the fall); *Jaber v. Meijer Grp., Inc.*, No. 348158, 2020 WL 4920969, at *4 (Mich. Ct. App. Aug. 20, 2020) (per curiam) ("Here, plaintiff presented no evidence supporting a reasonable inference that the water had been on the floor for more than a minute, more than an

hour, or half the day. For this reason, summary disposition in defendant's favor was warranted."); *see also Rathbun v. Family Dollar Stores of Mich. LLC*, No. 23-cv-10854, 2024 WL 3825194, at *4-5 (E.D. Mich. Aug. 14, 2024) (citing *Bragg* and *Jaber* approvingly). In the end, all that's left is speculation and guesswork about when the oil spilled, and that's not enough to submit this issue to a jury. *See Skinner*, 516 N.W.2d at 484; *McNeill-Marks*, 891 N.W.2d at 535.

Keenan also contends the employees should have noticed the oil because photos depicted a "large, spread-out puddle of oil." ECF No. 34, PageID.187. But the Buick's presence and his own park job complicate things for Keenan. Keenan's testimony indicates his truck and the Buick were parked close together. *Id.* at PageID.209. What's more, Kendrick's testimony went a step further: he indicated that Keenan had "parked crooked" such that his driver-side door was directly over any oil on the ground. *Id.* at PageID.241, 244. All this is to say, his truck's proximity to the Buick may have affected visibility of the oil, making it less likely an employee would discover it. Indeed, Kendrick testified that he could not see the oil from where he was standing inside the store, despite Keenan having parked almost right in front of the store entrance. *Id.* at PageID.243. The Court thus finds that Keenan has failed to establish a genuine issue of material fact on constructive notice.

Keenan resists this conclusion by pointing to Perkins's testimony and arguing there's a jury question on constructive notice because (1) oil spills were common at

the O'Reilly store and (2) the oil "may have been there several hours" before he fell yet it wasn't discovered by an employee as part of their daily procedure for checking for spills. ECF No. 34, PageID.187. First, as O'Reilly notes, the claim that the oil may have been present for "several hours" is belied by Keenan's own testimony that it was "fresh[]" and had probably been there for 30 to 60 minutes (though he ultimately says he didn't know the length of time it was there). *See id.* at PageID.213-214; *see also id.* at PageID.240 (Kendrick's testimony that the oil was "fresh"). Regardless, courts don't allow questions that require guesswork to proceed to a jury. *See Skinner*, 516 N.W.2d at 484. And second, the commonality of oil spills and O'Reilly's daily inspection procedure doesn't allow the Court to impute to O'Reilly constructive notice of a specific oil spill on a particular day. *See Altairi v. Alhaj*, 599 N.W.2d 537, 543-43 (Mich. Ct. App. 1999) (rejecting the plaintiff's assertion that the defendant's "general knowledge of local weather conditions" meant the defendant must have known or at least should have known of a specific patch of ice). There was also testimony from Perkins and Kendrick that employees regularly checked the parking lot for oil spills (including checks at open and close), and, specific to Kendrick, he said he didn't see any oil in the parking lot when he clocked into work around noon or when he checked around 1:00 p.m. ECF No. 34, PageID.229-230, 232, 237-239, 242. Without more than Keenan's speculative

14

testimony about when the oil first spilled, he has failed to establish a genuine, material factual dispute on constructive notice. Summary judgment is appropriate.

### IV.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 33). Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: May 12, 2025　　　　　　　　　　　　　　s/Brandy R. McMillion
　　Detroit, Michigan　　　　　　　　　　　　　BRANDY R. MCMILLION
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge